[Civil No. 3561. Filed November 4, 1935.]

[51 Pac. (2d) 252.]

BARTH MERCANTILE COMPANY, a Corporation, Appellant, v. ERASMO JARAMILLO, Appellee.

Mr. Isaac Barth and Messrs. Wilson, Wood & Compton, for Appellant.

Mr. Dodd L. Greer and Mr. Gregg Garcia, for Appellee.

LOCKWOOD, C. J.—Erasmo Jaramillo, hereinafter called plaintiff, brought suit against Barth Mercantile Company, a corporation, hereinafter called defendant, to have a certain bill of sale executed by plaintiff in favor of defendant declared null and void, and for $6,000, the alleged value of the cattle described in said bill of sale. The case was tried to the court sitting with a jury; special interrogatories being submitted to it. Thereafter, the court was requested to make written findings of fact, which it did, expressly adopting the answers of the jury to the interrogatories and proceeding to make a considerable number of additional findings. Upon these findings it rendered judgment that the bill of sale was void, and for $2,600 damages, and after the usual motion for new trial had been overruled this appeal was taken.

There are five assignments of error. While they are different in form, with one exception, they all reduced themselves to the proposition that the evidence does not sustain the findings of fact, and that such findings do not sustain the judgment. That exception is the contention of defendant that in an equity case the answers of a jury are merely advisory to the court. This is true, but since the court in its own findings expressly adopted the answers of the jury, we think we need not consider this point further.

We consider next whether the evidence supports the findings of fact. In so doing we must assume that the trial court found, in addition to the express findings of fact appearing in the record, such additional facts as are necessary to sustain the judgment, if they are reasonably supported by the evidence, and not in conflict with the express findings. *Hagan et al.* v. *Cosper*, 37 Ariz. 209, 292 Pac. 1020.

We have examined and read the entire transcript of evidence, and, considering it most strongly in support of the findings, express and implied, as under our invariable rule we must, we think it fairly shows the following state of facts:

Plaintiff was born on the 20th day of November, 1909; his father being Leandro Jaramillo and his grandfather one Filimino Silva. The latter was the owner of approximately 100 cattle branded J open A C, and in the early spring of 1920 he gave to plaintiff 30 head of cows which were thus branded. On April 2, 1920, there was recorded by plaintiff's father with the Livestock Sanitary Board, according to law, a brand in the name of plaintiff, which is called in the record T Breechen. The J open A C brand on these cattle was barred out and they were rebranded in the T Breechen brand and run upon the open range in Apache county for some five years thereafter by plaintiff's father, since plaintiff himself was then too young to take charge of them. In 1921, Leandro Jaramillo purchased some 29 head of heifers and yearlings which he branded in the T Breechen brand owned by plaintiff, and thereafter ran them on the range with plaintiff's cattle, caring for both herds as though they were one. Leandro Jaramillo during all these times was more or less indebted to defendant for various supplies purchased from its store, and in August, 1921, and after he had purchased the 29 cattle above described, mortgaged to defendant livestock described as follows:

"Fifty head of cattle branded T Breechen now running about ten miles south of St. Johns."

In 1925, being still indebted to defendant, he orally sold to it all the cattle owned by him in the T Breechen brand, then numbering some 39, and the aforesaid mortgage was canceled. About the 1st of Octo-

ber, 1925, defendant was the owner of the 39 cattle aforesaid in the T Breechen brand, and 209 other cattle which were branded in what we shall call the L E brand; plaintiff being then the owner of 60 cattle in the T Breechen brand. On that date it entered into a written contract with Leandro Jaramillo, of the nature commonly known in the cattle business in Arizona as a "partido" agreement. By its terms Leandro Jaramillo was to care for defendant's cattle for six years at his own expense, and at the end of that time was to deliver to defendant certain cattle of a number and class specified in the contract, the remaining herd to be the property of Leandro Jaramillo. It was further provided that all of the increase of this herd was to be branded in the L E brand. Plaintiff was aware of the terms of this contract, and by this time was old enough to assist his father very materially, and from the time of the contract until the 15th of October, 1928, he did so assist him and was familiar with all that he did in handling the partido cattle. These cattle and those owned by plaintiff ran on practically the same range and were handled by Leandro Jaramillo and plaintiff in substance as one herd. All of the increase, however, of the cattle branded T Breechen, whether owned by defendant or plaintiff, were by the Jaramillos branded with the same brand as the mother's and in addition some of the increase of the L E cattle were also placed in the T Breechen brand. In October, 1928, defendant had discovered this fact, and took away from Leandro Jaramillo the custody of the cattle which he had under the partido contract above referred to. At this time at least 65 of the cattle in the T Breechen brand consisted of either the original 30 cows which plaintiff had acquired from his grandfather, or the increase thereof to 1928. Defendant thereupon demanded of plaintiff that he exe-

cute a bill of sale to it conveying to it not only all of the cattle in the T Breechen brand, regardless of their ownership, but the brand itself, and promised, in consideration thereof, to give to him some other brand and 65 head of cattle of like kind and breed as those which were owned by plaintiff in the T Breechen brand. Relying on this promise, plaintiff executed the bill of sale, being at this time a minor of the age of 19 years and not represented by any legal guardian authorized by law to make such a contract. Defendant never delivered to plaintiff the 65 cattle which it had promised him, and after he had attained his majority he repudiated the contract and demanded the return of his cattle. The cattle, however, had been by defendant removed from the state of Arizona, and many of them had been lost or sold or otherwise disposed of so that it was unable to return them. The value of plaintiff's cattle so retained by defendant was found to be $2,600 at the time they were delivered to it by plaintiff, and the trial court rendered judgment for that amount. It is true that defendant strenuously denied that it or its agents had ever made any promises to plaintiff to give him any cattle in return for those of his turned over to it by the bill of sale of October 15, 1928, and insists (a) that plaintiff and his father had stolen from them all the cattle represented by the bill of sale in question, through a violation of the partido contract, and (b) that if any of these cattle did, as a matter of fact, belong to plaintiff, they had been by him so intermingled with their cattle that it was impossible to separate them, and that under the law when such an intermingling occurs the party who has permitted it or caused it must identify his property or lose it all.

The evidence is in sharp conflict on many of the issues of fact, but the jury and the trial judge are

the sole judges of the credibility of the witnesses, and we think there is sufficient evidence in the record to justify the court in finding as it did, either expressly or by implication, that all of the facts above recited by us are. true. Such being the case, plaintiff was entitled to judgment for $2,600, unless, as a result of the intermingling of the cattle by him and his father, he was compelled to identify the particular cattle belonging to him in 1928. The law is that the party responsible for an intermingling of goods which cannot thereafter be identified or properly divided must bear the loss, if any, and had this been an action in replevin, requiring a division of the T Breechen cattle, the burden would have been on plaintiff to establish ownership of the particular cattle he claimed. *Hagan* v. *Cosper, supra.* But the record shows that, with a full knowledge of the commingling, defendant acknowledged that 65 of the commingled cattle belonged to plaintiff and promised to deliver him other cattle of the same kind and number. This, we think, took the case out of the rule and was such an acknowledgment by defendant of plaintiff's rights as would justify him in recovering the value of 65 of the average cattle in the T Breechen brand in 1928, if defendant failed or refused to redeliver them.

The judgment is affirmed.

McALISTER and ROSS, JJ., concur.