424 P.2d 455

ASSOCIATED BUILDERS, INC., an Arizona corporation, Appellant,

v.

Al STOVALL and Irene Stovall, his wife, Robert C. Stovall and Lois Stovall, his wife, Jack K. Stovall and Noyla Stovall, his wife, James A. Stovall, a single man, Orville K. Mills and Myra Mills, his wife, Austin P. Lutz and Vera Jane Lutz, his wife, Supreme Builders, an Arizona corporation, Appellees.

No. 8202.

Supreme Court of Arizona, In Division.

March 1, 1967.

Spector & Johnson, and Wm. J. Samuels, Phoenix, for appellant.

Christy, Kleinman, Peterson, Hoyt & Fuller, Phoenix, for appellee Al Stovall and others.

Allen B. Bickart, Phoenix, and Alan M. Kyman, Phoenix, for appellee Supreme Builders.

UDALL, Justice:

The appellant corporation, plaintiff below, and hereinafter referred to as plaintiff, brought this action against appellees, defendants below, alleging its claim in three counts:

(1) For a claimed breach of written contract; (2) the second claim was dismissed and no appeal taken therefrom; (3) plaintiff claimed that the defendants agreed to satisfy a claim against the plaintiff by McMillan Mortgage Company, and that the defendants refused to abide by their agreement. The trial court granted judgment in favor of defendants on both counts.

The facts, briefly stated, are as follows: Plaintiff corporation is a subdivider and owned a residential subdivision in the City of Phoenix known as "Cinderella Meadows". In the latter part of 1959 Nate Rosenbaum, the president of the plaintiff corporation, and defendant Al Stovall entered into negotiations for the sale and purchase of certain properties owned by plaintiffs. On January 6, 1960 their negotiations were reduced to writing in a document designated as a purchase contract and receipt. However, the name of the plaintiff was not mentioned in the document and it was signed by Nate Rosenbaum in an individual capacity as seller and by Al Stovall as purchaser. Thereafter, on January 11, 1960, two escrows were opened with the Phoenix Title and Trust Company. The first escrow, No. 576–301, designated plaintiff as the seller and Al Stovall as buyer. The second escrow, No. 576–302, designated Nate and Ann Rosenbaum as sellers, and Al Stovall as the buyer. Escrow No. 576–301 was signed plaintiff corporation by Nate Rosenbaum, whereas Escrow No. 576–302 was signed by Nate Rosenbaum individually. Neither escrow was signed by defendant Al Stovall.

Prior to negotiations between the parties to this action the plaintiff had, on May 1, 1959, obtained from the McMillan Mortgage Company (hereinafter referred to as McMillan), a mortgage commitment in the amount of two million dollars, which was to be used as needed in the development of the subdivision owned by plaintiffs.

One of the provisions in Escrow No. 576–301 concerned the mortgage commitment and reads as follows:

"Seller hereunder agrees prior to close of escrow to transfer to buyer its commitment for mortgage financing with the McMillan Mortgage Company totaling $1,400,000."

The escrow instructions provided that the terms and conditions were to be complied with on or before February 1, 1960, except as otherwise specified therein. On the 20th day of January, 1960, two trust agreements were signed by the negotiating parties and were deposited with Phoenix Title & Trust Company, as trustees. Trust Agreement No. 3300 pertained to the real estate described in Escrow No. 576–302, and was executed by Nate Rosenbaum and Ann Rosenbaum, his wife, as the first beneficiaries, and Al Stovall and Irene Stovall, his wife, and others, as the second beneficiaries.

The second Trust Agreement, No. 3301 VQ, was executed by the plaintiff corporation as the first beneficiary and Al Stovall and Irene Stovall, his wife, and others, as the second beneficiaries. Trust No. 3301 VQ pertained to the real estate described in Escrow No. 576–301.

On January 25, 1960 the plaintiff, by its president, Nate Rosenbaum, and Nate Rosenbaum and Ann Rosenbaum, his wife, and Al Stovall and his wife, wrote a letter to the title company wherein they advised the company as follows:

"Notwithstanding any of the language in the above and foregoing paragraphs as to the buyers assuming and agreeing to pay the total balance of principal and interest, as far as the buyers and the sellers in Trust No. 3300 and 3301 are concerned, the limit of the sellers' remedy shall be an option to declare the contracts forfeited."

The plaintiff and defendant Al Stovall, on February 8, 1960, executed an amendment to the escrow instructions, No. 576–301—Ex 16, as follows:

"In connection with trust agreement made a part of the above numbered escrow, you are directed to show the following wording in Section 8 thereof; the seller's only recourse in the event of default shall be the repossession of the then unreleased portions of land."

The trust agreement between plaintiff and the Stovalls, numbered 3301 VQ, contained the following interlineation in paragraph 8 thereof: "have the option to declare the contract forfeited." Other remedies which were in the original trust agreement were crossed out and replaced by interlineations noted above.

During the trial Weldon Girard, agent of the Ed Post Realty Company, where the purchase agreement was executed, in response to the question asked by the court, to relate the conversation between the parties prior to the signing of the agreement of January 6, 1960, stated:

"All right, sir. So as we went over the various aspects of this contract, Mr. Stovall repeated the various terms and conditions which were agreed upon, and stated it was necessary that this mortgage commitment be a part of the contract, and also the nonliability feature be injected into it, which eliminated any specific performance or anything else in the event of default.

"As I recall, that was what transpired in the last meeting just prior to the execution of this document."

A stipulation in lieu of a pre-trial order was entered on April 16, 1963, limiting the issue to be determined by the court as follows:

"Whether the defendants agreed to assume the obligation created by the note dated May 1, 1959, which plaintiff gave to McMillan Mortgage Company for the purpose of securing a commitment to loan $2,000,000."

The plaintiff first contends that the judgment of the trial court was unsupported by the evidence and was contrary to law, because plaintiff having assigned its rights in the mortgage commitment to defendant Stovall, Stovall as assignee took the assignment with benefit of its low discount fee, and the burden of its contingent liabilities.

The evidence shows that the purchase contract and receipt dated January 6, 1960, had as one of the terms and conditions a paragraph which reads:

"Seller is to transfer to buyer his commitment for mortgage financing with McMillan Mortgage Company totalling $1,-400,000. Said commitment includes: both interim financing and permanent financing at four (4) points net. It is understood said commitment expires November 1960."

Since the commitment for mortgage financing was with McMillan, it would appear from the face of the contract that the commitment could not be assigned to a buyer without the consent of McMillan, the parties who were advancing the money and would naturally have the right to determine the parties to whom they would make such a commitment. The testimony of Walter Kidwell, the manager of McMillan, shows conclusively that the plaintiffs did not have blanket authority to assign or transfer this commitment without the consent of McMillan. His testimony on this point is as follows: (Questions by Mr. Peterson)

"Q Mr. Kidwell, referring to Exhibit 5 for Identification which is the letter of March 31, 1960, from you to Mr. Rosenbaum, as president of Associated Builders, I notice you state in this letter that the McMillan Mortgage Company commitment did not stipulate permission for assignment?

"A That is correct.

"Q In other words, if I understand the commitment correctly, Mr. Kidwell, Mr. Rosenbaum did not have a right to agree to assign that mortgage without your prior consent?

"A Correct."

There was some evidence given on the part of Kidwell that the consent was given to make the assignment but the question of the date of the giving of the consent was finally determined to have been in a letter dated February 17, 1960, which reads:

"Dear Mr. Fowler: [Fowler, president of Supreme Builders]

"Please be advised that McMillan Mortgage Company is in a position to supply your company with any amount of mortgage money which you may require in the above subject subdivision."

It was developed in the testimony that the subdivision in question was "Cinderella Meadows", and further, that McMillan was agreeable to making the assignment when it learned that Stovall was to be a partner of "Supreme Builders". [Further testimony from Mr. Kidwell]:

"Q As a matter of fact, you know that Mr. Stovall never became a part of Supreme Builders and never intended to.

"A I know he never became a part of Supreme Builders.

"Q He never told you he intended to, did he?

"A I never talked to Mr. Stovall.

"Q He never promised to assume to pay the commitment of the Associated Builders for $20,000?

"A No, he did not.

"Q And you never accepted him as the obligor as in place of Associated Builders, did you?

"A Well, let me say this, all of my assumptions and what I did subsequent to the conversation with Mr. Fowler was predicated upon the fact that Mr. Stovall would be obligated on the balance of the amount of money which was owed to McMillan Mortgage Company.

"Q But he never became so obligated, did he?

"A No, he did not.

"Q And the commitment was never transferred from Associate Builders to Mr. Stovall, was it?

"A No.

"Q Hasn't been to this date?

"A No.

"Q And you never talked to Mr. Stovall?

"A No, sir.

"Q Never saw the man?

"A No.

"Q During any of these negotiations?

"A No."

Other testimony of the witness Kidwell throws light on the transactions between the parties, which reveals that on February 18, 1960, the manager of McMillan, after due investigation, concluded that Supreme Builders were not financially in a position to assume the commitment which the plaintiffs were endeavoring to transfer and assign. His testimony follows:

"Q Then at the time of these discussions, prior to the date of February 17th, had Mr. Fowler stated anything about an affiliation with Mr. Stovall?

"A Yes, as a matter of fact our first conversation indicated an affiliation with Mr. Stovall.

"Q And I believe you stated before you didn't have any definite knowledge whether the examination had been made, is that correct?

"A No, that is true.

"Q But at this time and as of the 17th of February, 1960, you were not going to extend the commitment to Fowler for Supreme Builders alone?

"A Individually, right.

"Q Now, referring to defendants' Exhibit 1, which is this $250,000 commitment, this was presented to Supreme Builders and Stovall jointly?

"A Yes.

"Q And it required both of them?

"A Correct.

"Q To be obligated, and I take it it was your testimony this was never signed?

"A Correct.

"Q Did you ever consider Supreme Builders and Stovall jointly obligated on this?

"A No.

"Q Or either of them separately?

"A No."

It thus clearly appears that the plaintiffs did not have the right to transfer and assign the commitment which it had attempted to assign, and it also conclusively shows that McMillan had never given its consent for a commitment to be made in favor of Stovall until February 18th.

Having in mind the stipulation of the parties as to the issues to be determined in this litigation, namely: whether defendants agreed to assume the obligations created by the note dated May 1, 1959, which plaintiff gave to McMillan Mortgage Company for the purpose of securing a commitment to loan $2,400,000, it is very evident there was ample testimony in the record upon which judgment for the defendant could be predicated.

■■■ The defendant, Al Stovall, did not, in the original contract of purchase and receipt, in the Escrow No. 576–301, nor in Trust Agreement No. 3301 VQ, agree to assume an indebtedness due McMillan from plaintiffs, and the $20,000 note was never mentioned. The Trust Agreement No. 3301 VQ, dated January 20, 1960, was modified by the parties to show that the limit of the sellers' remedy would be an option to declare the contract forfeited. And further, the parties on February 8, 1960 agreed that the sellers' only recourse in the event of default would be the repossession of the then unreleased portions of the land. The evidence taken in its most favorable light in support of the judgment of the court, clearly shows that the judgment should be sustained. This Court has repeatedly stated that evidence will be taken in the strongest manner in support of the trial court, and on appeal we will construe the evidence most favorable to sustaining the judgment of the lower court. Smith v. Smith, 71 Ariz. 315, 227 P.2d 214; Gillespie Land & Irrigation Co. v. Jones, 63 Ariz. 535, 164 P.2d 456; City of Bisbee v. Cochise County, 50 Ariz.

360, 72 P.2d 439; Barth Mercantile Co. v. Jaramillo, 46 Ariz. 365, 51 P.2d 252.

■ The plaintiff next contends the court erred in admitting into evidence Exhibit No. 16, which was an amendment to the escrow instruction dated February 8, 1960; claiming that the exhibit was ineffectual to act as a novation and therefore was immaterial and irrelevant to the issue of defendant Stovall's liability. This contention is without merit, first, because neither the purchase agreement, the escrow agreement nor the trust agreement committed the purchaser to assume the note for $20,000 given to McMillan Mortgage Company. Furthermore, the amendment to the escrow instruction, dated February 8th, being the first document signed by Al Stovall in connection with the escrow, limited the right of the sellers as follows:

"The sellers only recourse in the event of default shall be the repossession of the then unreleased portions of the land."

■ It is the law of this state that where there is a conflict of evidence we will not review the judgment of the trial court. Hatfield v. Arizona Highway Patrol Merit System, 97 Ariz. 24, 396 P.2d 256; Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893.

Judgment affirmed.

BERNSTEIN, C. J., and STRUCKMEYER, J., concur.