573 P.2d 528

**The STATE of Arizona, Appellant,**

v.

**George Y. MOLINA, Appellee.**

**No. 2 CA–CIV 2637.**

Court of Appeals of Arizona,
Division 2.

Dec. 20, 1977.

---

2. 40 U.S.C. § 270a et seq.

Stephen D. Neely, Pima County Atty. by Gilbert E. Boissy, Deputy County Atty., Tucson, for appellant.

Michael F. Beers, Tucson, for appellee.

## OPINION

RICHMOND, Judge.

On March 29, 1976, the State of Arizona instituted a special paternity action pursuant to A.R.S. § 12–841 et seq., as amended, alleging that appellee is the natural father of a child born out of wedlock. On August 9, 1976, the parties' attorneys stipulated that the complaining witness and the appellee would submit to polygraph examinations, and:

"The parties further stipulate that the matter need not proceed to trial before a jury at a further date, but instead stipulate as follows:

"1. That if the polygraph examination reveals that the defendant did not have sexual relations with the complaining-witness during the period from April 15, 1975 through June 15, 1975, then the complaint shall be dismissed.

"2. That if the polygraph examination reveals that the complaining-witness had sexual relations with any person or persons other than the defendant during the period from April 15, 1975 through June 15, 1975, then the complaint shall be dismissed.

"3. That if the polygraph examination reveals that the defendant had sexual relations with the complaining-witness during the relevant period of conception as set forth, and, if the polygraph examination reveals that the complaining-witness did not have sexual relations with any persons other than the defendant during the relevant period of conception, then judgment shall be entered in favor of the plaintiff and against the defendant . . . ."

By minute entry on October 7, 1976, the court found on the basis of the polygraph examinations that appellee was the father and ordered the state to submit a proposed judgment. On October 18 appellee's counsel was allowed to withdraw. New counsel was substituted and a motion for continuance was granted. Judgment against the appellee was entered on November 1. On the same day, however, a motion to vacate

the judgment was argued and granted on the basis that the stipulation was not made in the presence of the parties and was not signed by appellee.[1]

The matter then was tried to the court, and on December 31 the complaint was dismissed. The state has appealed from the order vacating the first judgment and the order of dismissal. We affirm.

■ The state argues that the appellee having signed a consent for the polygraph examination and his attorney having signed a stipulation on his behalf, the rationale of State v. Valdez, 91 Ariz. 274, 371 P.2d 894 (1962), has been satisfied. Valdez held that polygraphs and expert testimony relating thereto are admissible in Arizona criminal cases only upon stipulation [2] and subject to certain qualifications. One of the qualifications is that the prosecuting attorney, the defendant and his counsel must all sign a written stipulation providing for submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion on behalf of either party. While a paternity action is not a criminal proceeding, we think Valdez applies, and the evidence was properly excluded.

■ The state contends that the stipulation was valid in any event as to the complaining witness because her credibility was attacked and could have been sustained by use of the polygraph test. The Valdez requirements are not restricted to a test administered to the defendant, but extend to use of any material polygraph evidence. Further, the admissibility of the test is subject to the discretion of the trial judge, notwithstanding the stipulation of the parties.

■ The state's last contention is that the court erred in dismissing the complaint because the state has satisfied its burden of proof by a preponderance of the evidence. Where there is a conflict of evidence we will not review the judgment of the trial court. Associated Builders, Inc. v. Stovall, 102 Ariz. 54, 424 P.2d 455 (1967).

Affirmed.

HOWARD, Chief Judge, specially concurring.

I concur in the result because I am constrained to do so by virtue of State v. Valdez, supra. I do believe, however, that the time has come for our Supreme Court to re-examine its ruling in Valdez as was done by the New Mexico court in the case of State v. Dorsey, 88 N.M. 184, 539 P.2d 204 (1975) [1] and hold that the results of a lie detector test may be admitted into evidence without the necessity of a stipulation by the parties.

A trial is supposed to be a search for the truth. A mechanistic approach to the rules of evidence often thwarts the purpose of a trial and leads to injustice. For example, in a series of 312 paternity cases in Chicago, 93% of the 589 parties and witnesses admitted to a polygraph examiner that they had lied in court. G. Schatkin, Disputed Paternity Proceedings (Supp. 4th ed. 1976). This is an appalling indictment of our system of jurisprudence but comes as no surprise.

A comprehensive article on the admissibility of polygraph evidence is contained in 26 Hastings L.J. 917 (1975) "Admissibility of Polygraph Evidence in 1975: An aid in Determining Credibility in a Perjury-Plagued System". In this article the author, Barry Tarlow, points out that there has been judicial recognition of the reliability of the polygraph technique. In United States v. De Betham, 348 F.Supp. 1377 (S.D. Cal.1972), aff'd, 470 F.2d 1367 (9th Cir. 1972), cert. den., 412 U.S. 907, 93 S.Ct. 2299,

---

1. In appellee's affidavit in support of his motion to vacate, he stated that he took the lie detector test because he thought it could only be used to exonerate him and could not be used against him. He also stated that he did not see the stipulation until after the polygraph examination.

2. The Valdez holding was expressly reaffirmed as recently as 1975 in State v. Goldsmith, 112 Ariz. 399, 542 P.2d 1098.

1. And see, L. M. Romero, "Admissibility of Scientific Evidence Under the New Mexico and Federal Rules of Evidence". 6 New Mexico L.Rev. 187 (1976).

36 L.Ed.2d 972 (1973), the trial court recognized that the technique was extremely accurate if conducted by a competent examiner. The court also cited J. Reid and F. Inbauh, TRUTH AND DECEPTION (1966) whose authors reversed their opinion made 13 years ago that the polygraph evidence should not be admissible. The high degree of accuracy of the polygraph was also recognized in *United States v. Ridling,* 350 F.Supp. 90 (E.D.Mich.1972). Scientific evidence of accuracy is plentiful.[2]

It would seem that a theory which has developed past the experimental stage to "general use" in science or industry should be admissible in court. See, *United States v. Zeiger,* 350 F.Supp. 685, 688 (D.D.C.1972). In *State v. Valdez, supra,* our Supreme Court recognized that the polygraph has attained such a level of accuracy as to justify admission upon stipulation. If it is reliable enough for stipulation, why is it not reliable for trial? Such a distinction is not meaningful.

The major policy objections to the admissibility of lie detector evidence are (1) its reliability and accuracy have not been established by controlled experimental verification; (2) polygraphy remains an art with unusual responsibility placed upon the examiner; (3) it is possible that there are means of "beating" the test; and (4) the function of the jury is usurped if the results of the test are admissible. Each one of these objections is met and answered by Tarlow in his Hastings Law Review article. Specifically, numerous controlled systematic studies have been recorded. For example, in the study by John Reid and Frank Horvath, the results which established the polygraph's extremely high accuracy were corroborated by the strongest possible objective evidence, actual confessions. Reid and Horvath, "The Reliability of Polygraph Examiner Diagnosis of Truth and Deception", 62 J.Crim.L.C. & P.S. 276 (1971). Furthermore, in a situation in which the results

were obviously susceptible of objective evaluation it was found that the polygraph was accurate in excess of 93% of the time. Lykken, "The GSR in a Detection of Guilt", 43 J. Applied Psych. 385–388 (1959).

It is incorrect to suggest that interpretation of polygraph charts as opposed, for example, to the analysis of handwriting or ballistics, is essentially subjective, varying from polygrapher to polygrapher. Tests have shown this conclusion to be incorrect.

The objection that someone can beat the test is not that serious. According to one study, attempts to deceive the polygraph, even by those who are guilty, occur less than 20% of the time and are easily detected. Barland & Raskin, "Detection of Deception", in Electrodermal Activity in Psychological Research 435 (W. Prokasy and D. Raskin eds. 1973).

There are three answers to those who fear usurpation of the jury function through undue reliance by the jury on polygraph evidence. First, if a polygraph examination conducted by a competent examiner is as accurate as indicated, it merits substantial reliance in a process whose primary purpose is to search for truth. Second, recognized experts in the field agree that the administration of justice would not collapse but would improve with the introduction of polygraph evidence.[3] The polygrapher, like any other expert witness can be cross-examined and his deficiencies, if any, pointed out to the jury. Third, the concern for the "overwhelming impact" of the polygraph may be greatly exaggerated in view of several actual cases in which it was admitted.[4]

The results of the lie detector test are nothing more than the opinion of an expert witness based upon scientific data. I would venture to say that the opinion of the polygrapher is probably just as reliable as the opinion of a psychiatrist as to whether

2. See, 26 Hastings L.J. 931–934.

3. For example, see *Commonwealth v. A. Juvenile,* 365 Mass. 421, 313 N.E.2d 120 (1974); *State v. Alderete,* 86 N.M. 176, 521 P.2d 138,

142 (1974) [this New Mexico case was overruled but the case overruling it was itself overruled by *State v. Dorsey, supra.*]

4. 26 Hastings L.J. at 968.

or not a person is legally insane and just as reliable as eyewitness testimony. I cannot see how we can continue to ignore this evidence and should not do so if we are sincere in making a trial a search for the truth rather than a game of "who-can-lie-the-best". I would hold that if a proper foundation is laid as to the competency of the polygrapher, the lie detector test is admissible without stipulation.

HATHAWAY, J., concurs.