[Civ. No. 18083. Fourth Dist., Div. One. Jan. 5, 1979.]

In re JOAQUIN S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOAQUIN S., Defendant and Appellant.

## COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, J. Perry Langford and Harold F. Tyvoll for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Bernard A. Delaney, Jr., and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STANIFORTH, J.**—Joaquin S. contends abuse of discretion on the part of the trial court in refusing to admit polygraph evidence at a hearing to

vacate his order of commitment to the California Youth Authority (CYA). Joaquin had been committed to the CYA on July 12, 1977, after a hearing and true findings he had committed two armed robberies (Pen. Code, § 211). Joaquin brought this petition to vacate or modify under Welfare and Institutions Code section 778 (all references are to this code unless otherwise specified).[1] This section authorized the juvenile court to hear "new evidence" or "change of circumstances" to aid the court in determining whether it would be in the best interest of the minor either to modify or to terminate the CYA commitment. After hearing, the juvenile court denied Joaquin's request to vacate the CYA commitment, whereupon he appealed.

Joaquin's evidence, introduced at the hearing, included written progress reports from Fred C. Nelles School relating that he was making a satisfactory adjustment to the program and had made encouraging progress. Joaquin testified he had had no disciplinary problems at the Nelles School and was doing well in his academic studies. The trial judge refused to permit him to testify that he had not committed the robberies—the offenses for which he was committed to CYA.

Further, the judge refused to admit evidence of the results of two polygraph tests given Joaquin. Counsel made an offer of proof: Joaquin was questioned by a polygraph operator concerning his participation in the two robberies, the basis for his commitment to the CYA; the polygraph operator would testify Joaquin had answered truthfully in stating he had not committed the robberies. This offer of proof also included qualifications of the person administering the polygraph tests and proffered evidence as to the reliability of the polygraph results.

---

[1]Welfare and Institutions Code section 778 provides:

"Any parent or other person having an interest in a child who is a ward of the juvenile court or the child himself through a properly appointed guardian *may, upon grounds of change of circumstance or new evidence, petition the court* in the same action in which the child was found to be a ward of the juvenile court for a hearing *to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court.* The petition shall be verified and, if made by a person other than the child, shall state the petitioner's relationship to or interest in the child and shall set forth in concise language any change of circumstance or new evidence which are alleged to require such change of order or termination of jurisdiction.

"*If it appears that the best interests of the child may be promoted by the proposed change of order or termination of jurisdiction,* the court shall order that a hearing be held and shall give prior notice, or cause prior notice to be given, to such persons and by such means as prescribed by Sections 776 and 779, and, in such instances as the means of giving notice is not prescribed by such sections, then by such means as the court prescribes." (Italics added.)

■ Joaquin concedes that California case law flatly prohibits the use of evidence of polygraph testing on the trial of a defendant's guilt or innocence. Joaquin contends that the proceeding under section 778 is a collateral proceeding not involving the guilt or innocence and that several out-of-state decisions uphold the admissibility of such evidence.

Joaquin asserts that in a postcommitment setting the more "liberal" rules of evidence should apply than those used during the jurisdictional hearing itself. In California more liberal evidentiary policies do apply in probation and parole revocation proceedings. (See for example, *People* v. *Vickers,* 8 Cal.3d 451, 456, 457 [105 Cal.Rptr. 305, 503 P.2d 1313].) However, even in such proceedings, with the relaxed standards of admissibility, the evidence must be relevant and reliable. (See *In re Thomas,* 27 Cal.App.3d 31, 34 [103 Cal.Rptr. 567]; *In re Cook,* 67 Cal.App.2d 20, 24-25 [153 P.2d 578].) Polygraph evidence has not yet been established in California courts to pass this rudimentary test of admissibility. "These tests do not scientifically prove the truth or falsity of the answers given during such tests." (*People* v. *Jones,* 52 Cal.2d 636, 653 [343 P.2d 577].) And as was said in *People* v. *Thornton,* 11 Cal.3d 738, 764 [114 Cal.Rptr. 467, 523 P.2d 267]: "[L]ie detector tests themselves are not considered reliable enough to have probative value . . . ."

Nor does *People* v. *Lara,* 12 Cal.3d 903, 909 [117 Cal.Rptr. 549, 528 P.2d 365], aid Joaquin. In *Lara* an investigating officer testified that a material witness on the issue of probable cause to arrest had submitted to a lie detector test. The Supreme Court, in response to Lara's complaint that the prosecutor had used lie detector evidence to establish probable cause for his arrest, stated (at page 909): "[W]hatever may be the rule on the admissibility of the *results* of a polygraph test as evidence of *guilt*—a question we do not reconsider today—we are cited to no authority holding such collateral use of the test for investigative purposes to be improper. Moreover, this court in fact placed no reliance on the foregoing testimony in determining there was probable cause for defendant's arrest." Lara's glancing nondeterminative comment upon the use for collateral purposes of polygraph evidence is no authority whatsoever for the proposition here urged. The California court's unwillingness to use polygraph tests is further shown in *People* v. *Paul,* 78 Cal.App.3d 32 [144 Cal.Rptr. 431], at page 39, where it was held: "It is well settled that neither the willingness nor the unwillingness of a witness to take a polygraph test is admissible. [Citations.] Likewise, the results of such a test are also inadmissible absent a stipulation by both parties. [Citation.]"

■

The question of whether polygraph evidence can be used on a motion to reconsider under section 778 is a question of first impression in this state. Where this question has been considered in a variety of collateral proceedings in other jurisdictions, the underlying premise of unreliability of polygraph evidence has led to the refusal to admit such evidence. (See *People* v. *Allen,* 49 Mich.App. 148 [211 N.W.2d 533, 535, 536]; *State* v. *Laforest,* 106 N.H. 159 [207 A.2d 429, 431]; *Watkins* v. *State* (Tex.Crim. App.) 438 S.W.2d 819, 822; *United States* v. *Stromberg* (S.D.N.Y. 1959) 179 F.Supp. 278, 279-280.)

Joaquin cites *People* v. *Barbara,* 400 Mich. 352 [255 N.W.2d 171, 197], as authority for the proposition that polygraph evidence may be admitted in the trial court's discretion in a postconviction setting a motion for new trial. *People* v. *Barbara, supra,* at page 197, approved use of polygraph test evidence for a limited collateral purpose, yet the Michigan court stated in footnote 45: "Some other states which have considered the issue have done so only in the context of whether the polygraph evidence itself would be admissible at a new trial. However, our decision today is based precisely on the difference between a post-conviction motion for a new trial and the trial itself. If the only new evidence is the polygraph examination, this of course would be inadmissible at trial and would not be a sufficient basis for granting a new trial. . . ." Therefore, *Barbara* lends Joaquin no succor.

Equally nonpersuasive is *State* v. *Brown* (Fla.App.) 177 So.2d 532.[2] Closer in point of fact is *United States* v. *Stromberg, supra,* at page 280, where the court rejected the use of polygraph evidence on a motion for a new trial, because the evidence would not have been admissible at trial. The results of the polygraph simply supported defendant's story that he had not been involved in the conspiracy of which he had been convicted and did not relate to new witnesses or other new evidence. To have made a difference in the outcome of a trial, the polygraph test would itself have to be admitted into evidence. This the trial court was not prepared to do. See also *State* v. *Scott,* 210 Kan. 508 [502 P.2d 753, 760], holding polygraph evidence inadmissible on a motion for new trial stating

---

[2]Joaquin also cites *States* v. *Jones,* 110 Ariz. 546 [521 P.2d 978, 983]; *State* v. *Watson,* 115 N.J.Super.Ct. 213 [278 A.2d 543, 546]; *People* v. *Duck Wong,* 18 Cal.3d 178, 189 [133 Cal.Rptr. 511, 555 P.2d 297]; *People* v. *Adams,* 53 Cal.App.3d 109, 112-119 [125 Cal.Rptr. 518]; *People* v. *Jones, supra,* 52 Cal.2d 636, 653; *People* v. *Thornton, supra,* 11 Cal.3d 738, 764; *State* v. *Molina,* 117 Ariz. 454 [573 P.2d 528].)

A careful reading of these cases leads to this conclusion: none support Joaquin's position here. *State* v. *Dorsey,* 88 N.M. 184 [539 P.2d 204] supports Joaquin but is unpersuasive.

"Newly discovered evidence must be admissible to form a basis for granting a new trial."

In his effort to avoid the impact of decisional law, Joaquin professes not to be attacking the true finding made on the robbery charges. Yet by the questions put, the answers sought to be elicited, he seeks to establish that he had not perpetrated the crimes for which he was convicted. He would argue therefore he is not in need of rehabilitation. By whatever name it is called, Joaquin's efforts have one purpose: to prove his innocence, his noninvolvement in the robberies for which he was committed. The polygraph is not a truth machine. It does not supplant the finder of fact or breathe life into a defense already rejected by the trial court. This is but an oblique approach to retrial of the guilt issue. The only new evidence is the polygraph examination bearing upon the guilt question, this would not be admissible at trial and should not form a sufficient basis for modifying or vacating a commitment based upon the guilt finding.

A second and more fundamental objection bars the proffered evidence. The requirement rooted in due process is that evidence to be admitted in judicial proceedings must be relevant and reliable. Lie detector evidence has yet to pass these tests in California courts.

Judgment affirmed.

Brown (Gerald), P. J., and Harelson, J.,* concurred.

A petition for a rehearing was denied January 22, 1979, and appellant's petition for a hearing by the Supreme Court was denied March 14, 1979.

---

*Assigned by the Chairperson of the Judicial Council.