[Crim. No. 19218. Oct. 21, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
DUCK WONG, Defendant and Appellant.

**COUNSEL**

Richard H. Levin, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Kent L. Richland and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

D. Lowell Jensen, District Attorney (Alameda), and Thomas W. Condit, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**RICHARDSON, J.**—Defendant appeals from an order granting probation following his conviction of vehicular manslaughter (Pen. Code,

§ 192, subd. 3(a)) and of willfully leaving the scene of an accident without rendering aid (Veh. Code, § 20001). Among other contentions, we consider whether police interrogation of a suspect properly may occur, during the preinformation or preindictment stage of the proceedings, without first notifying, and obtaining the consent of, the suspect's counsel. (See *People* v. *Isby* (1968) 267 Cal.App.2d 484 [73 Cal.Rptr. 294]; cf. *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199].) We have concluded that, for reasons which appear below, the rationale of the foregoing cases does not apply to police interrogation occurring before formal charges have been filed.

On January 30, 1974, defendant's fiancee, Kai Kiu Liu, was struck and killed by a vehicle as she crossed an intersection in Los Angeles. At impact the car in question was observed to be travelling in excess of the posted limit and sped away after striking Miss Liu. One motorist pursued the vehicle and obtained its description and license number. The car was registered to defendant.

On February 4, Investigating Officer O'Toole sought assistance in locating defendant from Gary Yee, an acquaintance of defendant. Yee was a businessman who also represented the Yee family in the Los Angeles Chinese Consolidated Benevolent Association, an organization founded to promote the betterment of the Chinese community as a whole. Defendant Wong was a member of the Bingkohe Society, which represented a different Chinese family. On numerous previous occasions, Yee had assisted police investigations, on an uncompensated basis, in their contacts with the Chinese community.

On the same day, defendant retained Attorney Douglas to represent him in connection with the accident, and Douglas called O'Toole to inform him that defendant was his client and that Douglas would attempt to bring defendant to the police station. O'Toole advised Douglas that the former would cease his efforts to locate defendant and instead would work through Douglas on the case. Nevertheless, O'Toole persisted in his search for defendant, leaving a business card at defendant's place of employment with the notation "Mr. Wong, get into my office immediately regarding the accident."

On February 5, Yee and two other friends and advisors of defendant, Mr. Fong and Mr. Gee, met with defendant, and Fong and Gee urged

defendant to speak to the police. According to Yee, no threats or promises were made to defendant during this conversation, although defendant was told that if he failed to turn himself in to the police, he would probably be arrested by them. Defendant agreed to speak to the police, and the next morning Yee and defendant arrived at O'Toole's office. Yee acted as an interpreter because of uncertainty in defendant's ability to understand and express himself in English. O'Toole first inquired about the status of Attorney Douglas, and defendant responded that Douglas had advised defendant not to "come in," and that they (defendant and Yee) were going to obtain another attorney, since, as defendant put it, "what kind of an attorney would advise someone not to come in?" O'Toole, through Yee, then asked defendant "Will you talk to me without an attorney being present?" and defendant replied that he "would like to discuss the entire matter." O'Toole thereupon advised defendant of his constitutional rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and defendant indicated (at all times speaking through Yee as an interpreter) that he wished to waive those rights, including the right to have his counsel present during the interrogation.

The trial court expressly found, consistent with Yee's and O'Toole's testimony, and contrary to defendant's assertions, that proper *Miranda* warnings had been given to defendant and that they had been translated into a Chinese dialect understood by defendant, and that defendant knowingly waived his *Miranda* rights. As to counsel, there was a finding that O'Toole inquired regarding Attorney Douglas and was told by defendant that Douglas had advised defendant not to subject himself to an interview by the officers, and that defendant would retain another attorney; that defendant waived his constitutional rights to consult with and to have the presence of counsel by stating that he wished to speak to O'Toole without an attorney; and that Yee never assured defendant of police leniency if defendant elected to make a statement, although Yee, Fong and Gee advised defendant that he would be arrested if he failed to turn himself in and speak to the police.

Following defendant's waiver of his *Miranda* rights, O'Toole interrogated defendant, who proceeded to make inculpatory statements regarding the accident. Specifically, defendant admitted that at the time of the incident he realized that he had hit an object, possibly a rock; that he did not stop but proceeded to his destination; that upon his arrival he

examined his car and concluded that he had hit a person; and that thereafter he removed the license plates and abandoned his car.

Defendant, who was subsequently tried and convicted of the offenses specified above, makes four contentions on appeal: (1) that the inculpatory statements were rendered inadmissible per se by Officer O'Toole's failure to notify Douglas, defendant's counsel, of the interrogation; (2) that the statements were involuntary, being the product of threats or promises; (3) that Yee was incompetent to act as interpreter for defendant at the interrogation; and (4) that the trial court erred in denying a motion for a continuance. We will conclude that none of these contentions, which we now review, has merit.

### 1. *Defendant's Right to Counsel's Presence*

■ Defendant's primary contention is that since he was represented by counsel when the O'Toole interview took place, O'Toole violated defendant's constitutional rights by conducting the interview without first notifying counsel thereof. Although the trial court expressly found that defendant waived his right to counsel's presence, it is argued that the right to counsel at a custodial interrogation is so fundamental that it cannot be waived by the accused, and that statements made by the accused at the interrogation are inadmissible per se. A careful analysis of the question requires that we review a variety of precedents on the subject of custodial interrogation.

Initially, we note our preliminary assumption for purposes of our discussion and in the absence of contrary argument by the Attorney General, that defendant's interview, being instigated by Officer O'Toole, constituted a "custodial interrogation" invoking the requirements of *Miranda.* The record discloses, however, that although requested, indeed directed, to appear for an interview defendant voluntarily went to O'Toole's office. He apparently was free to leave the office at the conclusion of the interview, and in fact did so in the company of Yee. We do not pursue further, however, our inquiry as to the "custodial" character of the interrogation in light of the absence of contrary argument by the People. (See *People v. Arnold* (1967) 66 Cal.2d 438, 448-449 [58 Cal.Rptr. 115, 426 P.2d 515].)

Defendant's contention regarding the necessity for his counsel's presence during interrogation is derived primarily from *Massiah* v.

*United States, supra,* 377 U.S. 201, and *People* v. *Isby, supra,* 267 Cal.App.2d 484. *Massiah* held that the defendant's Sixth Amendment right to counsel was violated when federal agents secretly recorded his conversations with an informer *after defendant had been indicted* and had retained counsel. The high court reasoned that the admission into evidence of secretly recorded statements made by the defendant during this "critical" stage of the proceedings violated "the basic protections" of the Sixth Amendment. (P. 206 [12 L.Ed.2d p. 250].) The *Massiah* holding was later extended to police-initiated interrogations of the accused. (See, e.g., *McLeod* v. *Ohio* (1965) 381 U.S. 356 [14 L.Ed.2d 682, 85 S.Ct. 1556]; *United States* v. *Crisp* (7th Cir. 1970) 435 F.2d 354, 358, cert. den., 402 U.S. 947 [29 L.Ed.2d 116, 91 S.Ct. 1640]; *People* v. *Brice* (1966) 239 Cal.App.2d 181, 191-193 [48 Cal.Rptr. 562].) The *Brice* court summarized, as follows, the "central principle" to be derived from *Massiah*: "that incriminating statements made by a defendant *after he has been formally charged by indictment or information* [italics added] and while he is in custody are inadmissible where they have been *deliberately elicited* [italics in original] from him by enforcement agents or the police in the absence of his counsel." (P. 191.) As will be seen from the foregoing quotations, neither *Massiah* nor *Brice* suggested that the exclusion rule herein at issue applied to the less critical *investigatory* phase of a criminal case.

Subsequently, in 1968, the Court of Appeal held in *People* v. *Isby, supra,* 267 Cal.App.2d 484, that *once criminal charges have been filed* and the accused has retained counsel to represent him, the accused acquires an absolute, unwaivable right to counsel's presence at any subsequent police interrogation. The defendant in *Isby* had been advised of his constitutional rights, as required by *Miranda* v. *Arizona, supra,* 384 U.S. 436, and he had expressly waived those rights, including the right to have his attorney present during the interrogation. Nevertheless, the court ruled that defendant's subsequent inculpatory statements were per se inadmissible. *Isby* reasoned that the combined effect of *Miranda* and *Massiah* was that the United States Supreme Court had ". . . distinguished two distinct constitutionally proportioned rights. The first right is that an accused must be advised of his right to counsel when the accusatory stage of the criminal process has been reached, and the second right is that after a criminal charge has been filed against a defendant and he has counsel, he may not be subjected to an interrogation instigated by law enforcement officers for the purpose of eliciting incriminatory statements without effective aid of his counsel."

(P. 494; see also *Griffin* v. *Superior Court* (1972) 26 Cal.App.3d 672, 701-702 [103 Cal.Rptr. 379], [*Isby* rule inapplicable to volunteered statements]; *People* v. *Rowe* (1972) 22 Cal.App.3d 1023, 1032 [99 Cal.Rptr. 816] [same]; *In re Paul T.* (1971) 15 Cal.App.3d 886, 893-894 [93 Cal.Rptr. 510] [rule applies to juvenile proceedings]; *Tidwell* v. *Superior Court* (1971) 17 Cal.App.3d 780 [95 Cal.Rptr. 213]; *People* v. *Valencia* (1968) 267 Cal.App.2d 620 [73 Cal.Rptr. 303].)

Although there appears to exist a division of authority with respect to the propriety of a "per se inadmissible" rule such as that announced in *Isby* (e.g., compare *Moore* v. *Wolff* (8th Cir. 1974) 495 F.2d 35, 37, with *People* v. *Vella* (1967) 21 N.Y.2d 249 [287 N.Y.S.2d 369, 234 N.E.2d 422]), we do not pass on the question at this time, finding, as we do, ample reasons for declining to extend the *Isby* rule beyond its facts to the purely investigatory stage of a criminal process.

As we have observed, *Isby* involved police interrogation which occurred *after* defendant had been arraigned and charged with robbery. The *Isby* court stressed that the mere institution of criminal proceedings suggests that the People have legally sufficient evidence of the defendant's guilt. There is, accordingly, a lessened necessity for continued police interrogation and a reduced justification for any subsequent questioning of the accused in his counsel's absence. (See 267 Cal.App.2d at p. 490.) *Isby* concluded that, "To allow interrogation of an accused *after the criminal proceedings have commenced,* in the absence of the accused's counsel, would severely impair the Sixth Amendment guarantee . . . ." (*Id.,* at p. 493, italics added.)

Neither *Isby* nor any subsequent case, however, has suggested that the per se rule should extend to the interrogation conducted before charges are filed. Both *Massiah, supra,* and *Isby* were post-indictment cases which stressed the importance of counsel's representation during this critical stage in the proceedings. (See 377 U.S. at p. 205 [12 L.Ed.2d at p. 250].) Thus we have held that "[T]he principles expressed in *Massiah* do not apply in a pre-indictment setting. [Citations.]" (*People* v. *Murphy* (1972) 8 Cal.3d 349, 362 [105 Cal.Rptr. 138, 503 P.2d 594]; accord, *Hoffa* v. *United States* (1966) 385 U.S. 293, 309-310 [17 L.Ed.2d 374, 386-387, 87 S.Ct. 408]; *People* v. *Leach* (1975) 15 Cal.3d 419, 443 [124 Cal.Rptr. 752, 541 P.2d 296]; *People* v. *Mabry* (1969) 71 Cal.2d 430, 441 [78 Cal.Rptr. 655, 455 P.2d 759]; *People* v. *Brice, supra,* 239 Cal.App.2d 181, 191; *United States* v. *Masullo* (2d Cir. 1973) 489 F.2d 217, 222; *United States*

v. *Durham* (7th Cir. 1973) 475 F.2d 208, 210-211; see *Kirby* v. *Illinois* (1972) 406 U.S. 682, 688 [32 L.Ed.2d 411, 417, 92 S.Ct. 1877] [the Sixth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated"].)

Finally, there are compelling policy considerations against an extension of *Isby* to all custodial interrogations. Following the commission of a possible crime, it is essential that the police not be unduly hampered in their investigation. Under defendant's proposed extension of *Isby,* however, interrogation of suspects could be delayed indefinitely while the officers attempted to locate the suspect's counsel, notify him of the proposed interview, and either obtain his consent thereto or permit his participation therein. We find no convincing reasons why such a cumbersome procedure is necessary to protect a suspect's constitutional rights.

We conclude, accordingly, that, the incriminating statements having been made in the investigatory stage of the case before the institution of any criminal charge, neither *Massiah* nor *Isby,* nor any reasons of policy, required the presence of defendant's counsel during the interview.

2. ■ *Defendant's Statement was Voluntary*

Defendant next asserts that threats and promises made to him by Mr. Yee rendered his statements to the officers involuntary and undermined the validity of the waiver of his *Miranda* rights. Defendant testified at trial that Yee had told him the police would be more lenient if defendant gave himself up. Yee denied making such statements although he recalled warning defendant that he would likely be arrested unless he voluntarily met with the officers.

As we have noted, the trial court expressly found that Yee did not promise any leniency by the police, that no threats were made to induce defendant to make a statement, and that defendant's statements were made freely and voluntarily. In view of the conflicting testimony, on this appeal "we accept that version of events which is most favorable to the People, to the extent that it is supported by the record." (*People* v. *Randall* (1970) 1 Cal.3d 948, 954 [83 Cal.Rptr. 658, 464 P.2d 114]; see *People* v. *Sanchez* (1969) 70 Cal.2d 562, 570-573 [75 Cal.Rptr. 642, 451 P.2d 74].) Accordingly, on the basis of our review of the record, we conclude that the trial court's finding that defendant's statements were

freely and voluntarily made is supported by substantial evidence in the record.

### 3. *Use of Mr. Yee as an Interpreter*

 Defendant challenges Yee's competence and ability to act as an interpreter for defendant with respect to O'Toole's interrogation. Defendant points out that he testified at trial that Yee did not advise him of his *Miranda* rights. Defendant also testified, however, that he was able to understand Yee when he spoke in Chinese, and Yee in turn testified that he did explain defendant's rights to him, and that defendant understood those rights. The trial court expressly found that O'Toole advised Yee and defendant of each of the *Miranda* rights, that Yee translated this advice into Chinese and into a dialect understood by defendant, and that defendant waived those rights and stated that he wished to speak to O'Toole without an attorney present.

 As previously observed, where there is a conflict in the evidence regarding a defendant's waiver of *Miranda* rights, ". . . it is the duty of the reviewing court to determine if there is substantial evidence in the record to uphold the finding of the trial court, and the trial court's ruling will not be disturbed on appeal unless if is palpably erroneous." (*People v. Duren* (1973) 9 Cal.3d 218, 238 [107 Cal.Rptr. 157, 507 P.2d 1365].) We conclude that there was substantial evidence to support the trial court's findings on this issue.

We note that defendant's counsel asserts on appeal that a "trained interpreter" with no "involvement" with the case should have been used during the O'Toole interview. Aside from counsel's failure to furnish any authority in support of this proposition, we note additionally that trial counsel failed to object to Yee's testimony on this basis, and accordingly has waived the point.

### 4. *Failure to Grant a Continuance*

 Finally, defendant contends that the trial court erred in refusing to grant a continuance in midtrial so that defense counsel might obtain the testimony of the polygraph operator who tested defendant. According to defendant, the operator would have testified regarding the reliability of the test, thereby justifying admission of test results indicating that defendant believed Yee had made both promises and threats to induce defendant to turn himself in to the police.

Trial courts possess broad discretion in ruling upon requests for continuances, and a denial thereof will not be disturbed on appeal in the absence of a clear abuse of that discretion. (*People* v. *Bethea* (1971) 18 Cal.App.3d 930, 937 [96 Cal.Rptr. 229]; see Pen. Code, § 1050; *People* v. *Laursen* (1972) 8 Cal.3d 192, 204 [104 Cal.Rptr. 425, 501 P.2d 1145].) The record indicates that the trial court herein denied defendant's motion for lack of due diligence in securing the presence of the specified witness. (See *People* v. *Lynch* (1971) 14 Cal.App.3d 602, 607 92 Cal.Rptr. 411].) In view of the fact that polygraph evidence is not presently admissible in California courts (see *People* v. *Thornton* (1974) 11 Cal.3d 738, 763 [114 Cal.Rptr. 467, 523 P.2d 267]), and that accordingly a full preliminary hearing on the reliability of such evidence would have been required (see *People* v. *Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240] [voiceprint evidence]), the trial court did not abuse its discretion in refusing an 11th-hour request for a continuance under such circumstances.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.