[Crim. No. 16786. First Dist., Div. Two. Sept. 29, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY LYNN McCOWAN, Defendant and Appellant.

676

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Ezra Hendon, Tanya Neiman, Harriet Wiss Hirsch and Gail Weinheimer, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**McBRIDE, J.**\*—We are considering two separate criminal trials of defendant McCowan. He was tried by jury on a charge of attempted robbery (violation of Pen. Code, §§ 664, 211) committed in Salinas September 17, 1976.[1] A second information charged him with burglary (violation of Pen. Code, § 459) committed October 18, 1976, at the Prunedale library in Monterey County; on this charge he waived a jury and was tried to the court on the transcript of the preliminary hearing.

He was convicted in both trials and was sentenced to the California Youth Authority on sentences to run concurrently.

The attempted robbery was a purse snatching incident. At about 5 p.m., the victim was opening the trunk of her automobile when she heard someone running and yelling. She looked up and saw two young men; one of them, whom she later identified as the appellant, was doing the yelling. He veered toward her and grabbed her purse. She held on to it and was dragged about 15 feet before it split apart, spilling the contents and causing her to fall down. Appellant ran on and disappeared from her sight.

At the police station the following day she was asked to view six photographs. She immediately selected appellant's as being that of the man who had attacked her. Later, at the trial she emphasized that her in-court identification was based on what she remembered the man looking like when he grabbed her purse.

Witness Shear testified that appellant picked him up between 6:30 and 7 p.m. on that same day and that appellant told him that he had tried to take an old lady's purse, that she fell when the strap broke, and he ran off.

Appellant was arrested by Officer Herrera, who pulled appellant's car over at about 9:38 p.m. that same evening. At that time the officer observed small pieces of tape on the front license plate of appellant's car, which impaired visual determination of the numbers. Shear also testified that appellant had stopped the car after they left a gasoline station, where

---

\*Assigned by the Chairperson of the Judicial Council.

[1]There were ancillary charges, not important to this decision, to which he pleaded either nolo contendere or guilty, and which were then determined by the court to be misdemeanors.

they had not paid for fuel received, had walked to the rear of the car and returned with black electric tape in his hands.

Appellant's defense to the attempted robbery charge was alibi; its establishment at trial was attempted through the testimony of his mother, his sister and his former girl friend, who placed him at home all that day until 8:30 p.m. One Gary Ake, the sister's boyfriend, testified that Shear told him appellant did not commit the purse snatch.

■ Appellant raises the issue that he was denied a fair trial because the trial court refused to give jury instructions proffered by him bearing on eyewitness identification.[2] One of them is nearly identical to CALJIC No. 2.91, which was given. No. 2 primarily repeats No. 4 and CALJIC No. 2.91, which was given. No. 3, paraphrasing language found in *United States* v. *Wade* (1967) 388 U.S. 218, 228 [18 L.Ed.2d 1149, 1158, 87 S.Ct. 1926], attempts to instruct the jury on the dangers of eyewitness testimony. It does not state a principle of law or establish a basis for instructing a jury. Moreover, it is incorrect in stating that eyewitness testimony was the only evidence connecting appellant to the crime. There was in addition thereto appellant's admission to Shear and the inference of guilt which could be made from the taped license plates. No. 5 was objectionable because it would have served to focus the jury's attention on the testimony of the victim, and to charge the jurors how it should be viewed. It is improper to single out a particular witness in the instructions. (*People* v. *Smith* (1977) 67 Cal.App.3d 45, 49 [136 Cal.Rptr. 387]; *People* v. *Grant* (1970) 11 Cal.App.3d 687, 690 [89 Cal.Rptr. 784].) No. 6 has its genesis in *United States* v. *Wade, supra,* 388 U.S. 218. It is not true as stated therein that witnesses are unlikely to change their testimony. Reasonably able cross-examiners frequently cause them to change or qualify identification testimony.

---

[2] The instructions in question are as follows:

*Defendant's Proposed Instruction No. 2:*

"You are instructed that the identity of the person who committed the crime is an element of every charge. The burden is on the State to prove beyond a reasonable doubt not only that the crime alleged was committed, but also that the defendant was the one who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the witness' identification of the defendant.

"In this regard, you are instructed that it is not necessary for the defendant to prove that another person may have committed the crime, nor is it the burden of the defendant to prove his innocence. If facts and circumstances have been introduced into evidence which raise a reasonable doubt as to whether the defendant was the person who committed the crime charged, then you should find the defendant not guilty of the offense."

*Defendant's Proposed Instruction No. 3:*

"When the prosecution has offered identification testimony, that is, the testimony of an

Appellant's instructions are argumentative, redundant or otherwise objectionable and were properly rejected. Appellant says that he "sought to highlight . . . attempted to emphasize." This is properly left to oral argument. Appellant has not mentioned CALJIC No. 1.01, routinely given by trial courts in criminal cases. It correctly states the law on avoidance of emphasis in instructing, and reads, in part, "If the court has repeated any rule, direction or idea, or stated the same in varying ways, no emphasis was intended and you must not draw any inference therefrom. You are not to single out any certain sentence or any individual point or instruction and ignore the others. You are to consider all the instructions as a whole and are to regard each in the light of all the others."

■ Appellant contends that the trial court erred in admitting evidence of the taped license plates. The evidence warrants an inference that appellant applied the tape either before or soon after the attempted robbery; since it occurred several hours before the attempt to steal gasoline, it gives rise to a reasonable inference that appellant disguised

---

eyewitness that he saw the defendant commit the act charged, such testimony should be received with caution. An identification by a stranger is not as trustworthy as an identification by an acquaintance. Mistaken identification is not uncommon. Careful scrutiny of such testimony is especially important when, as in this case, it is the only testimony offered by the prosecution to connect the defendant with the act charged."
*Defendant's Proposed Instruction No. 4:*
"The burden is on the People to prove beyond a reasonable doubt, not only that the offense was committed as alleged in the Information, but also that the defendant is the one who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the identification before you may convict him. If the circumstances of the identification are not convincing beyond a reasonable doubt, you must find the defendant not guilty."
*Defendant's Proposed Instruction No. 5:*
"In determining whether a reasonable doubt exists as to the accuracy of the witness's identification, you should consider, among others, the following factors:
"Whether, during his original observation of the perpetrator of the crime, the witness was aware that a crime situation was involved;
"The witness's opportunity to observe the person or persons committing the alleged criminal act;
"The existence of a discrepancy between the original perpetrator of the crime and the defendant's actual description;
"The lapse of time between the alleged act and the identification;
"The existence of a discrepancy between a description given at a prior court proceeding and that originally given by a witness;
"The fairness or lack of fairness in the identifying procedure."
*Defendant's Proposed Instruction No. 6:*
"Dangers of suggestion, that is, circumstances which draw attention to a particular person, exist in any identification procedure. The suggestion may result in a witness identifying the defendant, before trial, when, in fact, he is not the person who committed the act charged. It is a matter of common knowledge, however, that once a witness has identified someone prior to trial, he is not likely to change his testimony at the trial."

his plates either in preparation for a robbery attempt, or to protect him in case someone had seen the license plate. It was not an abuse of discretion for the trial court to admit this evidence after weighing its prejudicial effect against its probative value.

■ The court did not err in admitting testimony from Charles Moss that Shear had told him of appellant's admission of the purse snatching about one week after appellant's arrest. There was contradictory evidence, presented by appellant, that Shear had not told the district attorney of appellant's admission until shortly before the trial and that he told Gary Ake the night of the arrest that appellant did not take the purse. The evidence of the prior consistent statement was properly admitted to show that Shear's testimony at trial was not a recent fabrication. (*People* v. *Utter* (1972) 24 Cal.App.3d 535, 553 [101 Cal.Rptr. 214].)[3]

The burglary was of the Prunedale branch of the Monterey County library. A fingerprint on a hot plate belonging to the library and found nearby was identified as that of the appellant.

Appellant was interviewed by Detective Brown after his arrest on a charge unrelated to either of the two cases we are considering. Detective Brown did not know that appellant had counsel in the unrelated matter, nor did he make any inquiry about whether appellant had any counsel. But, he gave a *Miranda* warning,[4] which includes, of course, instruction on the right to counsel, to appointment of counsel at public expense, if necessary, and the right to defer deciding whether to talk until after consultation with counsel. ■ Because of the ample protection afforded by such an admonition the interrogating officer is permitted to proceed to question where the existence of counsel in another case is not known to the officer, nor mentioned by the person admonished, and where he understands his rights and waives them. Nothing in *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], or *People* v. *Isby* (1968) 267 Cal.App.2d 484 [73 Cal.Rptr. 294], both cited by appellant, is contrary.

---

[3]Testimony of appellant's mother about a misunderstanding between herself and Shear, which might have biased Shear toward her son, clearly occurred subsequent to the statement made to Moss.

[4]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

In the recent case of *People* v. *Booker* (1977) 69 Cal.App.3d 654, 664 [138 Cal.Rptr. 347], the court ruled that even though counsel had been appointed in another case and the police officer knew that fact, an admission to the officer was admissible in the new prosecution. The key factor was that counsel had not yet been appointed in the second case. Thus, here too the police officer's knowledge or ignorance of other representation was irrelevant, appellant not yet having been charged with and counsel not having been appointed for the burglary.

Even assuming the officer's knowledge were relevant, the trial court impliedly ruled, on substantial evidence, that he was unaware of representation by counsel in the other action. Appellant raises the question of whether the trial court decided that issue under the proper standard, arguing that such a determination must be made beyond a reasonable doubt.

Subsequent to the briefing in this case, the conflict in California law on the question of standard of proof of voluntariness of a confession has been resolved by the Supreme Court. In *People* v. *Jimenez* (1978) 21 Cal.3d 595 [147 Cal.Rptr. 172, 580 P.2d 672], the court announced as a rule of state criminal procedure that the prosecution must prove the voluntariness of every confession beyond a reasonable doubt. The rule was specifically made applicable to all cases pending on appeal (*id.,* at p. 608), and the court concluded that it could not be presumed from silent records that trial courts had been applying the correct standard before the *Jimenez* decision. (*Id.,* at p. 609.)

■ Appellant seeks application of the same standard for the factual determinations here. However, it seems evident from a reading of *Jimenez* that the reasons for applying the strict standard of proof to the question of voluntariness do not apply to the trial court's determination of whether the interrogating officer knew or should have known appellant was represented by counsel on another case.

*Jimenez* created its strict standard of proof in order to insure that coerced confessions, because of their possibility of unreliability and devastating impact, not be presented to the jury. (21 Cal.3d at pp. 606-608.) The court noted that the People were in a position to impose adequate controls over interrogation to remove almost all doubt as to whether a confession was voluntary. (*Id.,* at p. 608.)

There is no comparable public need to exercise great vigilance in protecting the jury from confessions given to police officers aware of defendant's representation in other cases while allowing only confessions to officers legitimately unaware of such representation. A confession given to an officer aware of the suspect's representation by counsel is inherently no less reliable than one given to an officer legitimately unaware of the defendant's representation. If there is any reason to distinguish between such confessions (note the conclusion of *Booker* that there is not), it relates not to the jury's fact finding function, but only to a general interest in restricting investigating officers from taking shortcuts in developing their cases.

In light of the differences between the factual determination of voluntariness and the determination of whether an officer was or should have been aware of a suspect's representation on another charge, it cannot be assumed that the Supreme Court's rule of criminal procedure was intended to extend to the latter determination. Thus, if such a determination was material, the trial court must have utilized the correct standard of proof and properly admitted the confession.

Both convictions are affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied October 24, 1978, and appellant's petition for a hearing by the Supreme Court was denied November 30, 1978.