[Crim. No. 16638. First Dist., Div. Two. Nov. 2, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
STERLING BRYAN BOYD, Defendant and Appellant.

## COUNSEL

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, B. E. Bergesen III and Gail R. Weinheimer, Deputy State Public Defenders for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Timothy A. Reardon and John B. Moy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—Defendant, Sterling Bryan Boyd, appeals[1] from a judgment of conviction entered on a jury verdict finding him guilty of second degree burglary (Pen. Code, § 460)[2] and arson (Pen. Code, § 447a).[3] He contends that his arson conviction must be reversed as his admissions were obtained in violation of his right to counsel and that certain errors and omissions in the instructions confused and misled the jury.

The record reveals the following pertinent facts: Larry Moore, the owner of a multi-unit apartment building at 819 14th Street in San Francisco, was out of town from February 5 to March 3, 1976. He stored a large number of miscellaneous items in his basement, including antiques and merchandise that he used in his business. Moore had met

---

[1]Defendant's premature notice of appeal filed in pro. per. on February 17, 1977, was deemed by this court as a timely notice from the judgment rendered on May 19, 1977.

[2]Although defendant was charged, convicted and committed pursuant to Penal Code section 459, the proper statutory reference is Penal Code section 460.

[3]Defendant received concurrent sentences.

defendant, whom he knew by the name of Bryan Burke, around the end of 1975. He and defendant rented a stall together on several occasions at the Alameda Flea Market. Defendant had been in Moore's storage room on several occasions to carry out things for the flea market.

When Moore left town on February 5, the basement storage room was secured by bars on the windows, double locks on the back door and two padlocks on the front door. No one had permission to enter during Moore's absence and one of his tenants, Mr. Siskow, was asked to watch the entire building. When Moore returned on March 3, he found his building empty and condemned as the result of a fire on March 2. He was unable to find any debris to match a number of metal items that had been stored in the basement, including some bronze lamps and sterling silver pieces.

Subsequently, Moore discovered several of these items at a store in Livermore. Mr. Luna, the owner of the Livermore store, had purchased these items from defendant for $68 cash some time between January and March of 1976.

At the time of the fire, John Wise lived in apartment 2 on the second floor of Moore's building. During the first three months of 1976, defendant stayed with Wise three or four times a week and had access to Wise's telephone. Wise's telephone bill for February 1976 reflected two calls to Luna's number in Livermore that Wise had not made. When Wise discovered the fire about 1 a.m. on March 2, defendant was not in Wise's apartment.

G. Dawson indicated that defendant spent the night at his home on Haight Street. Dawson had met defendant the previous evening at a bar. When Dawson woke up early in the morning around 4-6 a.m., defendant was not there. Dawson went back to sleep and woke up again around 9 a.m. and found defendant there. Defendant made a telephone call and then told Dawson that a house had burned down. They proceeded to 819 14th Street and helped some of the occupants.

Inspector Desmond examined the scene of the fire on March 2. In his opinion, the fire originated at two independent points in the basement, and that at each point a separate fire had been set.[4] In view of the absence

---

[4]D. Morris, the investigator for Moore's insurer, examined the premises on March 8, 1976, and reached a similar conclusion as to the incendiary origin of the fire.

of electrical or gas outlets in the area, he ruled out accidental nonhuman causes; he also investigated and eliminated spontaneous combustion. He did not, however, consider whether the fires had been set accidentally. Desmond spoke to all of the occupants of the building, including defendant. Defendant gave the name of Bryan Burke, and denied any knowledge of the fire, as he had been working and then went to visit a friend. Desmond never indicated to defendant or anyone else there that day, or to Moore, that the fire was the result of arson. A few days after the fire, defendant told Robert Reid that the fire had been set to cover up a burglary.

On March 4, Moore saw defendant at a restaurant but did not say anything to him about the fire; however, defendant might have overheard Moore talking about arson as Desmond had previously told Moore that the fire might have originated as arson.

On April 26, 1976, San Francisco Police Inspector Marweg interviewed defendant about the burglary and fire. Prior to the interview, defendant was advised of, and waived his *Miranda* rights. Defendant indicated that on several occasions during Moore's absence, he had removed various items from the basement without Moore's permission. Defendant also stated that he was not at the scene of the fire on March 2 as he was at Dawson's until about 10-11 a.m. and knew nothing about the fire until he saw the engines. After the interview, Marweg arrested defendant for burglary and arson. The second statement taped that afternoon[5] at the police station was played to the jury and not transcribed by stipulation. After again waiving his rights, defendant admitted that he had removed and sold various items during Moore's absence but with Moore's authorization. He sold them for $400 and gave Moore $100 of the proceeds from the sale. Defendant suggested that Moore only claimed he had been burglarized because he was in debt. Defendant reiterated that on March 2, he had been at Dawson's from 2:30 a.m. until about 10 or 11 a.m. and that he knew nothing about the fire until he and Dawson returned to 819 14th Street. Defendant explained that he had been using the name "Burke" since the revocation of his probation.[6]

The following day (April 27), Marweg discussed defendant's case with a deputy district attorney and believed a complaint would be filed in two

---

[5] The tape was included as part of the record on appeal and considered by this court.

[6] The record indicates that defendant had suffered one to two prior misdemeanor convictions but no prior felony convictions.

counts, the first for burglary between February 5 and March 1, and the second for receiving stolen property. Marweg later discovered that the original complaint alleged a burglary between February 5 and March 2. March 2 was the date of the fire. Defendant was arraigned on this complaint on April 28 and counsel was appointed to represent him on that date.

Defendant was in custody when he was again contacted by Marweg and questioned about the arson on April 30 and May 6; on both occasions, he waived his *Miranda* rights. Marweg made no attempt to contact defendant's counsel before these interviews, although, on the basis of his knowledge of statutory time requirements for the arraignment, Marweg assumed that defendant had appeared and had been assigned an attorney on the charges of burglary and receiving stolen property.

During the April 30 interview, defendant admitted that he had talked on the telephone about the fire at Dawson's, which contradicted his April 26 statement as to when he first learned about the fire. On May 6, defendant admitted to Marweg that he had used Dawson's car to go to 819 14th Street while Dawson was asleep. Defendant was in the process of removing more property from the storeroom after he left Dawson's at 6 a.m., when he dropped a lighted cigarette or match and accidentally started the fire. After unsuccessfully trying to put it out, he called the fire department anonymously[7] and returned to Dawson's. On November 18, 1976, defendant was charged by an information: Count I charged burglary at Moore's between February 5 and March 1; count II, burglary at Moore's on March 2; and count III, arson at Moore's on March 2.

At the beginning of the trial, the court held an extensive hearing to determine the admissibility of the above mentioned statements. Defendant's counsel urged that the April 30 and May 6 statements had been obtained in violation of defendant's right to counsel as the burglary and fire were part of a continuing and related course of conduct. The court ruled that the portions of the statements relating to the burglary were not admissible, but that the arson portions were admissible as that charge was not filed until after May 6. Count II of the information pertaining to the burglary on March 2 was dismissed. At the trial, Marweg testified about

---

[7]A recording of two telephone calls to the fire department was admitted into evidence. The caller provided the address, 819 14th Street, and indicated that "The whole bottom is on fire."

the April 30 statement and an edited version[8] of the May 6 statement was read to the jury. As indicated above, defendant was found guilty of second degree burglary of 819 14th Street between February 5 and March 1, and arson of the same premises on March 2.

Defendant's major contention on appeal is that since the burglary and arson charges were so closely related, his April 30 and May 6 statements were obtained in violation of his right to counsel and should not have been admitted into evidence. He relies primarily on the rule of *People* v. *Isby*, 267 Cal.App.2d 484 [73 Cal.Rptr. 294], as applied in *People* v. *Duren*, 9 Cal.3d 218, 243 [107 Cal.Rptr. 157, 507 P.2d 1365], and *People* v. *Chen*, 37 Cal.App.3d 1046 [112 Cal.Rptr. 894]. On the basis of *Massiah* v. *United States*, 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], and the state constitutional guarantee as applied to police-initiated interrogations (*People* v. *Brice*, 239 Cal.App.2d 181, 191-193 [48 Cal.Rptr. 562]), *Isby*, *supra*, held at page 490, that once criminal charges have been filed and the accused has retained counsel to represent him, the accused acquires an absolute, unwaivable right to counsel's presence at any subsequent police interrogation. Accordingly, any subsequent waiver of *Miranda* rights that results in inculpatory statements is ineffective and the statements are inadmissible per se. *Duren*, *supra*, and *Chen*, *supra*, held that where counsel had been appointed to represent the defendant on a *completely unrelated charge*, a subsequent waiver of counsel was effective and the statements admissible.

The People, relying on *People* v. *Duck Wong*, 18 Cal.3d 178 [133 Cal.Rptr. 511, 555 P.2d 297], and *People* v. *Booker*, 69 Cal.App.3d 654, 663 [138 Cal.Rptr. 347], assert that the *Isby* rule does not apply in the instant case as defendant had not yet been charged with arson at the time of his April 30 and May 6 statements. However, in *People* v. *Duck Wong* and *Booker*, no adversary proceedings had commenced against the defendant concerning the crime about which he was being interrogated. In *Duck Wong*, the defendant had not been arrested but voluntarily went to the police station. Our Supreme Court, after reiterating that the *Isby* rule did not apply to volunteered statements, held, at page 186 of 18 Cal.3d, that the rule would not be extended to interrogations conducted before charges are filed. Similarly, in *Booker*, *supra*, at pages 663-664, the defendant asked for the opportunity to make the first statement, despite

---

[8]The edited version contained the following reference to the burglary: "Answer: No, was going back to get some more stuff and then I noticed the fire starting when I turned around. Question: Well, then did you have more than this one big box of lamps in the car at that time? Answer: No. I just got one box of lamps."

the attempts of the police to postpone it. No adversary proceedings had been commenced against Booker on the murder about which he was interrogated. Booker had counsel on a totally unrelated charge in a different state. No extradition proceedings were under way and no arrest warrant had been issued on the murder charge. Thus, neither *Duck Wong* nor *Booker* is applicable here, since charges had been filed and an attorney appointed in the closely related burglary, and defendant did not volunteer the two statements in issue. Here, as in *Isby, supra,* 267 Cal.App.2d at page 486, the interrogations occurred after the defendant had been arraigned and counsel appointed, but before the preliminary hearing and before the filing of the information.

Accordingly, the applicable principle must be deduced from the manner in which *Isby* was applied in *Duren, supra,* 9 Cal.3d 218, and *Chen, supra,* 37 Cal.App.3d 1046. Thus, where a defendant has been charged and counsel appointed in a closely related offense, the *Isby* rule applies. Contrary to the People's contention, *Brewer* v. *Williams,* 430 U.S. 387 [51 L.Ed.2d 424, 97 S.Ct. 1232], aids defendant's contention here. In Brewer, the defendant had been arraigned and counsel appointed on a different offense relating to the same victim. The court said at pages 398 and 399 [51 L.Ed.2d at p. 436]: "This right, guaranteed by the Sixth and Fourteenth Amendments, is indispensable to the fair administration of our adversary system of criminal justice. Its vital need at the pretrial stage has perhaps nowhere been more succinctly explained than in Mr. Justice Sutherland's memorable words for the Court 44 years ago in *Powell* v. *Alabama,* 287 U.S. 45, 57: '[D]uring perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself.' [¶]There has occasionally been a difference of opinion within the Court as to the peripheral scope of this constitutional right. See *Kirby* v. *Illinois,* 406 U.S. 682; *Coleman* v. *Alabama,* 399 U.S. 1. But its basic contours, which are identical in state and federal contexts, *Gideon* v. *Wainwright,* 372 U.S. 335; *Argersinger* v. *Hamlin,* 407 U.S. 25, are too well established to require extensive elaboration here. Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' *Kirby* v. *Illinois, supra,* at 689. See *Powell* v. *Alabama,*

*supra*; *Johnson* v. *Zerbst*, 304 U.S. 458; *Hamilton* v. *Alabama*, 368 U.S. 52; *Gideon* v. *Wainwright, supra*; *White* v. *Maryland*, 373 U.S. 59; *Massiah* v. *United States*, 377 U.S. 201; *United States* v. *Wade*, 388 U.S. 218; *Gilbert* v. *California*, 388 U.S. 263; *Coleman* v. *Alabama, supra.*"

We cannot hypothesize two offenses more closely involved and related than the burglary and arson in the instant case. Both involved the same premises, the same victim; they were also closely connected in time. The uncontroverted evidence indicates that defendant was a suspect as to the fire from the start and questioned about the fire on April 26, both before and after his arrest. He was arrested for both the burglary and the arson on April 26. As the burglary and arson were part of a continuing and related course of conduct, we cannot separate the charges and appointment of counsel on the burglary charges from the subsequent arson charge, or treat these facts as occurring in the purely investigatory or preindictment setting. As previously indicated, so closely related were the alleged violations of burglary and arson that despite the court's order admitting the pertinent statements edited to exclude any reference to the burglary, one of the admitted statements necessarily included a reference to the property defendant removed from the building and thus to the burglary (see fn. 8 above). We conclude, therefore, that defendant's April 30 and May 6 statements were obtained in violation of his right to counsel, pursuant to *Isby, supra*. Accordingly, his waiver of counsel was ineffective and both statements were inadmissible per se.[9]

■ *Isby, supra*, 267 Cal.App.2d 484, however, also held at page 495, that despite the constitutional error, where as here, a defendant's statements constitute an admission rather than a confession, we must determine whether, upon an examination of the entire record, we can declare our belief beyond a reasonable doubt that the error did not contribute to the trial court's finding of guilt (*Chapman* v. *California*, 386 U.S. 18, 22-24 [17 L.Ed.2d 705, 709-710, 87 S.Ct. 824, 24 A.L.R.3d 1065]). We note that here, even with defendant's erroneously admitted statements of April 30 and May 6, the jury had some difficulty in reaching a verdict on the arson charge. While we are aware that the very nature of the crime of arson indicates that the evidence will be circumstantial (*People* v. *Beagle*, 6 Cal.3d 441, 449-450 [99 Cal.Rptr. 313, 492 P.2d 1]),

---

[9]We need not consider the People's contentions concerning *Michigan* v. *Mosley*, 423 U.S. 96 [46 L.Ed.2d 313, 96 S.Ct. 321], as our Supreme Court has since indicated that *Mosley* will not be followed in construing the greater protection afforded by our state Constitution in the field of fundamental liberties (*People* v. *Pettingill*, 21 Cal.3d 231, 246-248 [145 Cal.Rptr. 861, 578 P.2d 108]).

the evidence that defendant was the perpetrator of the arson was far from overwhelming. Dawson's testimony that defendant was not present between 4-6 a.m. on March 2, did not indicate that defendant was at 819 14th Street; also, the time did not conform with Wise's discovery of the fire at 1 a.m. The record contains only Reid's statement that defendant indicated to him several days later that the fire had been set to cover up a burglary and the recording of defendant's telephone calls to the fire department. We conclude, therefore, that the admission of the April 30 and May 6 statements was prejudicial under the applicable standard of *Chapman, supra*, set forth above. Accordingly, the conviction for arson must be reversed.

In view of the above conclusion, we need not discuss defendant's contentions pertaining to the jury instructions.

The conviction of arson is reversed and the conviction of burglary is affirmed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied December 1, 1978, and respondent's petition for a hearing by the Supreme Court was denied January 17, 1979. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the petition should be granted.