[Civ. No. 24435. Fourth Dist., Div. One. Nov. 17, 1981.]

In re MICHAEL B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL B., Defendant and Appellant.

**COUNSEL**

Frank C. Scanlon, Acting Public Defender, and Tim B. Severin, Deputy Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney Gen-

eral, Jay M. Bloom and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, J.**—A petition filed August 11, 1980, charged Michael B. with burglary of the Loper residence on August 9, 1980. Following his detention hearing on August 12 after an attorney had been appointed to represent him, he confessed during police initiated interrogation to the Loper burglary and to two other burglaries committed by him on August 4 and 8. A second petition charged him with these additional burglaries. In a jurisdictional hearing, the court excluded from evidence the confession to the Loper burglary because it was the product of police questioning after the filing of formal charges at a time when Michael had counsel in accordance with the rule of *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199]. (See also *People* v. *Isby* (1968) 267 Cal.App.2d 484 [73 Cal.Rptr. 294]; *People* v. *Brice* (1966) 239 Cal.App.2d 181 [48 Cal.Rptr. 562].) The petition based on that burglary was dismissed for insufficient evidence. The court, in deciding the confessions of the two other burglaries did not come within the rule, found the allegations of the second petition to be true, and ordered Michael to spend five days in juvenile hall.

In this appeal, Michael challenges the court's evidentiary ruling claiming all confessions were inadmissible because the interrogation was conducted in the absence of his appointed lawyer in violation of his state and federal constitutional right to effective assistance of counsel. As we will explain, we have concluded the court ruled correctly and affirm the order.

*Factual and Procedural Background*

The three burglaries were committed in the minor's neighborhood within the six days spanned by August 4 to August 9, 1980. In each the minor entered the residence through an open door or window, without property damage, and took small amounts of cash or nothing. The August 4 and August 8 burglaries of the residences of victims Livesey and LaRocque occurred at 10810 and 10830 San Leon Street in Fountain Valley; the minor lived in that same block at 10800 San Leon Street. The August 9 burglary of the Loper residence was at 17805 San Miniso

Street, Fountain Valley, within 150 to 200 yards of the minor's residence, five to six houses away and around a corner.

Michael was first arrested on the Loper burglary. The minor's parents told the arresting officer Michael might be involved in other reported burglaries in the area, and further stated they had found $40 in cash stashed in their garage. A petition was filed against Michael on August 11, charging the Loper burglary. The next day, immediately after the detention hearing on that charge, while Michael was in custody at juvenile hall waiting for his father to come and pick him up on a release to parental custody, Police Officer Mosley came to question Michael about the Loper, Livesey and LaRocque burglaries. Michael's probation officer gave the officer permission to speak to Michael, indicating Michael had not been to court yet. The officer asked Michael if he wanted the probation officer present during questions. Michael said no. The officer then said Michael's father was on his way to pick up the minor and asked if he wanted his father to be present. Again Michael said no. The officer twice asked Michael if he wanted his father to be present and act as his lawyer, and Michael twice declined. He said he did not want anyone present while he was questioned. The officer gave the full *Miranda* v. *Arizona* ((1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) warnings and Michael agreed to talk to the officer. He then confessed to all three burglaries.

In admitting the confessions to the LaRocque and Livesey burglaries, the court made these findings: (1) At the time of questioning no formal charges had been filed on the Livesey and LaRocque burglaries, but only on the Loper burglary; (2) there is "no relationship between the minor's admission as to burglary number one and burglary two and three"; (3) the officer's conduct was reasonable and satisfied the purpose of the *Miranda* requirement to prevent violation of constitutional rights; (4) counsel had not been appointed on the Livesey or LaRocque burglaries; (5) the Livesey and LaRocque burglaries are not "so intricately related" to the Loper burglary "that there would be some kind of a spillover effect"; and (6) the People "have been penalized sufficiently" by excluding the Loper confession.

*Discussion*

After filing of formal charges against a defendant and appointment of counsel to represent him, police-initiated interrogation is absolutely barred out of the presence of counsel, even if defendant

wished to permit such questioning. (*People* v. *Isby, supra*, 267 Cal. App.2d 484, 489 et seq. [73 Cal.Rptr. 294] citing many jurisdictions.) Such questioning violates the right to counsel secured by the Sixth and Fourteenth Amendments and contravenes fundamental tenets of fairness in the criminal justice system because it interferes with representation of the defendant during the critical preliminary stage when protection may be most needed. (*People* v. *Isby, supra*; and see *Massiah* v. *United States, supra*, 377 U.S. 201; *People* v. *Brice, supra*, 239 Cal.App.2d 181.) The *Massiah* rule followed upon the characterization of the period from arraignment to trial as critical (*Powell* v. *Alabama* (1932) 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55, 84 A.L.R. 527]), and focuses not on any necessary illegality or impropriety in the conduct of the officer, who may be acting perfectly properly, but rather on the interference with defendant's attorney which may increase his difficulties in fashioning an effective defense. Thus, the right protected by the *Massiah* rule differs from the exclusionary rule under the Fourth Amendment which focuses on prevention of police illegality in impermissible invasions of privacy. It also differs from *Miranda*'s Fifth Amendment protection, which seeks to prevent undue pressure upon the defendant in order to establish the People's case out of the mouth of the accused. The prosecution may not use "any extrajudicial statement by the defendant, whether inculpatory or exculpatory, either as affirmative evidence or for purposes of impeachment, obtained during custodial interrogation in violation of the standards declared in *Miranda* and its California progeny." (*People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272].)

On the other hand, although an attorney's representation of a defendant may be needed before formal arraignment, that need conflicts with another societal value, the necessity to permit effective police investigation to gather sufficient evidence to file a charge. Accordingly, before charges are filed, questioning out of the presence of an attorney who already represents the defendant is not absolutely barred, but rather is permitted, provided the Fifth Amendment waiver is valid. (*People* v. *Duck Wong* (1976) 18 Cal.3d 178 [133 Cal.Rptr. 511, 555 P.2d 297]; *People* v. *Gray* (1979) 91 Cal.App.3d 545, 555-556 [154 Cal.Rptr. 555].) The court in *Duck Wong* indicated the Sixth Amendment right only attaches after the commencement of adversary judicial procedures, because it is essential not to hamper police investigation. (18 Cal.3d at p. 187.) In *Duck Wong*, counsel had already been secured upon the charge which was to be filed and about which defendant was being questioned. In *People* v. *Gray*, defendant confessed to San Francisco

police while he was held on Alameda County felony charges; it was there stated without much discussion the charges were not related, and also the record did not indicate appointment of counsel on the Alameda charges. Thus in *Gray*, the record did not establish the threshold condition of appointment of an attorney which invokes the Sixth Amendment protection, while in *Duck Wong*, no formal charges had been filed. In both instances questioning, after valid *Miranda* waivers, was permissible.

■ The case before us falls into a more difficult category. Here formal proceedings have started on one count with an attorney having been appointed on that charge, but other charges were still being investigated. Should the police be able to initiate questioning on the uncharged offenses while defendant is in custody on the charged matters, out of the presence of defendant's attorney? Of the cases in California on this subject, only one, *People v. Boyd* (1978) 86 Cal. App.3d 54 [150 Cal.Rptr. 34], has ruled such questioning impermissible, on facts showing a close relationship of the charged and uncharged offenses (nearly contemporaneous burglary and arson of same premises). The court there applied the *Isby* rule of nonwaivable right to be questioned only in the presence of counsel because the two crimes presented an inseparable factual mosaic upon which formal adversary proceedings had in fact commenced. This conclusion followed from the relationship of the offenses. Although the opinion does not say so, it may also have followed from the probability the same attorney would represent the defendant on both charges. On those facts, *Boyd* held no questioning could be permitted.

The other cases on the subject, all permitting voluntary interrogation on one charge out of the presence of counsel appointed on a different charge, rest on either the lack of proximity of the offenses, the discrepancy in the seriousness of the offenses with consequent unlikelihood of the same attorney representing defendant on both, or on a combination of such factors plus the fact full *Miranda* warnings were given and the waiver was wholly voluntary. The principal cases are *People v. Booker* (1977) 69 Cal.App.3d 654 [138 Cal.Rptr. 347]; *People v. McCowan* (1978) 85 Cal.App.3d 675 [149 Cal.Rptr. 611]; *People v. Chen* (1974) 37 Cal.App.3d 1046 [112 Cal.Rptr. 894], overruled on another point in *People v. Jimenez* (1978) 21 Cal.3d 595, 608 [147 Cal.Rptr. 172, 580 P.2d 672]; *People v. Duren* (1973) 9 Cal.3d 218 [107 Cal.Rptr. 157, 507 P.2d 1365].[1]

[1]See also *Brewer v. Williams* (1977) 430 U.S. 387 [51 L.Ed.2d 424, 97 S.Ct. 1232], where counsel had been appointed for a different offense against the same victim, and

In *Chen*, defendant was questioned on homicides in San Francisco after appointment of counsel on Oakland burglary charges; the court said the officer had no information counsel was appointed in Oakland nor that such counsel might represent defendant on the San Francisco charges. Accordingly, the intelligent waiver of counsel's presence was permissible. That case focused on the information available to the officer, although that consideration was found irrelevant in the post-indictment *Massiah* cases, and although, as we have stated, the purpose of the *Massiah* rule is not to deter any police illegality, but rather to shore up the attorney's ability to make the best possible defense.

In *McCowan*, questioning was permitted because the offenses were unrelated. They were (1) an attempted purse snatch robbery in Salinas on September 17, 1976, and a burglary of the Prunedale library in Monterey County on October 18, 1976, treated together, and (2) the stated unrelated offense, which is not factually described in the opinion. The court in *McCowan* said if a full *Miranda* warning is given and the existence of other counsel on the other charge is not known to the officer, nor mentioned by the defendant, then *Massiah* and *Isby* do not apply. (*People* v. *McCowan, supra*, 85 Cal.App.3d 675, 683.) The focus was on Fourth and Fifth Amendment considerations—police illegality and voluntariness—rather than on the factual relationship of the offenses and the extent of possible interference with the attorney's ability to defend the client. That *McCowan* was not focusing on the relevant Sixth Amendment considerations is shown by the absence of any detail indicating the nature of the offenses and demonstrating why they were considered to be separate.

In *People* v. *Duren, supra*, 9 Cal.3d 218, an attorney had been appointed to represent defendant in San Diego on a concealed weapons charge. He was suspected of a more serious murder/robbery offense in Los Angeles County. The police in San Diego had information the San Diego offense would probably be dropped, and the defendant was released to Los Angeles for questioning where he was questioned outside the presence of his San Diego attorney. This procedure was held permissible because the charges were completely unrelated and the San Diego charge would probably be dropped. The case does focus on the appropriate factors and establishes the test used later in *Boyd*, namely, whether the charged and uncharged offenses are related so that ques-

---

the court found where adversary proceedings had begun the government must meet a heavy burden of showing express and knowing waiver to permit interrogation—a ruling which does, albeit reluctantly, permit a Sixth Amendment waiver in such situation.

tioning on one interferes with representation on the other. Obviously, in *Duren*, the great discrepancy in magnitude of the offenses argues for separateness, and the possibility the San Diego charges would be dropped, establishes the slim likelihood of any interference with representation on that charge. Also, because the Los Angeles offenses were so serious, there is a grave societal stake in investigation of those offenses, not lightly to be ignored simply because there is counsel on the somewhat trivial San Diego offense.

Similar considerations underlie *People* v. *Booker, supra,* 69 Cal. App.3d 654, where after committing a gruesome kidnap/murder in Los Angeles, defendant was apprehended on a routine robbery in New Mexico and charged formally there. Los Angeles sheriffs questioned Booker in New Mexico, out of the presence of his local counsel, but after very carefully secured, voluntary waivers of all rights. (In fact, Booker initiated the interrogation there.) Again, both the lack of relationship of offenses and the far more serious nature of the crime under investigation caused the court to find the *Isby* rule not violated. Additionally, in *Booker*, the fact the interrogation was begun by defendant rather than the police invoked yet another exception to the *Massiah* rule. (See also *People* v. *Garner* (1961) 57 Cal.2d 135 [18 Cal.Rptr. 40, 367 P.2d 680]; *Griffin* v. *Superior Court* (1972) 26 Cal.App.3d 672 [103 Cal.Rptr. 379].)

We now examine the case before us in light of the foregoing. The crimes are the same—three burglaries, close in time, same modus operandi, same general locale. In this sense, the crimes are "closely related." Probably, the same attorney would have been appointed to represent Michael on all charges had they been filed at the same time. Even with the filing of the charges at different times, the likelihood of a different attorney representing Michael on the uncharged offenses is slight. Nevertheless, the record does not reveal in what manner interrogation of Michael on the charged offense interfered with effective representation of him on the uncharged offenses. In *Boyd*, where the facts of the burglary, the charged offense, and arson of the same premises at or about the same time, were so inextricably enmeshed that factually and conceptually it was virtually impossible to distinguish the events, questioning on one crime necessarily impinged upon the effective representation on the other. Here, there is not that same intertwining of facts which will dilute effective representation either in preparing for trial or at trial. In addition, evidence relating to the first charged offense can be totally excised at trial without prejudice to Michael. Accordingly, in the

context of Sixth Amendment, *Massiah* protection, "closely related" charges therefore must be restricted to only those charges which are so interconnected that separation of the charges and representation by counsel on one distinct from the others cannot be accomplished. (See *People* v. *Boyd, supra,* 86 Cal.App.3d 54, 62.) We conclude the court's evidentiary ruling admitting the confessions of the August 4 and 8 burglaries was correct.

Michael's counsel has argued the admissions of the uncharged burglaries are the "fruit" of the admission of the charged offense. (See *Wong Sun* v. *United States* (1963) 371 U.S. 471 [9 L.Ed.2d 441, 83 S.Ct. 407]; *People* v. *Johnson* (1969) 70 Cal.2d 541, 546 [75 Cal.Rptr. 401, 450 P.2d 865, 43 A.L.R.3d 366], cert. den., 395 U.S. 969 [23 L.Ed.2d 758, 89 S.Ct. 2720]; *People* v. *Knight* (1980) 111 Cal.App.3d 201 [168 Cal.Rptr. 421].) That argument, however, is not relevant to a *Massiah* case for the same reason the entire Fourth Amendment analysis is not apposite. The police are not penalized for a *Massiah* violation. Hence, whether the "fruit" is sufficiently far removed from the illegal conduct that it may be exploited without rewarding official misconduct is irrelevant. We are only concerned with not permitting erosion of attorney representation in a formal criminal proceeding, and where such erosion occurs it is necessary to eliminate use of the "fruit" in order to rectify the error and permit a trial not flawed by the weakening of Sixth Amendment rights.[2]

*Disposition*

Order affirmed.

Brown (Gerald), P. J., and Work, J., concurred.

---

[2]Although we have been aided by the trial court's findings, its finding that the "People have been penalized sufficiently" is surplusage. Our analysis reveals we must be concerned solely with the protection of the attorney-client relationship and not whether a penalty may have been sustained by the People.